IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| GREGORY TODD, Personal Representative of the Estate of Paul Rolfes,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF HELENA, DARREN CHAVERS, ANDREW MOHR, NICK LESHINSKI, JACOB HAMILTON, BRYCE LIEBEL, and DOES 1-10,<br><br>Defendants. | CV 25-87-H-KLD<br><br>ORDER |

This matter comes before the Court on Defendant City of Helena's ("the City") Motion to Dismiss for Failure to State a Claim for Relief pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 4). For the reasons discussed below, the motion is denied.

## I. Background[1]

This case arises from a November 2, 2024 encounter between Paul Rolfes and members of the Helena Police Department ("HPD") which resulted in Rolfes' death. On that day, Rolfes barricaded himself in the bathroom of Jester's Bar, a

[1] The following facts are taken from the allegations in the Complaint & Jury Trial Demand (Doc. 1), which are accepted as true for purposes of the pending motion.

local establishment. (Doc. 1 at ¶ 24). Jester's had previously banned him from its premises, and staff called 911 seeking help in removing Rolfes, who was experiencing "a mental health emergency." (Doc. 1 at ¶¶ 25-27). Rolfes had been diagnosed with schizophrenia and had addiction issues. (Doc. 1 at ¶ 18). His diagnosis of schizophrenia substantially limited his ability to care for himself, interact with others, work, communicate and perceive reality. (Doc. 1 at ¶ 19). He qualified for social security disability benefits and was unable to work. (Doc. 1 at ¶ 23).

Rolfes' mental health issues were known to the HPD, as members of the HPD had previously taken him "into protective custody due to his mental health issues, including schizophrenia and auditory hallucinations." (Doc. 1 at ¶¶ 21-22). Additionally, Rolfes was on supervision with the probation office, and his supervising officer knew of Rolfes' mental health concerns. (Doc. 1 at ¶ 20).

Officer Darren Chavers initially responded to the call on November 2nd, and attempted to open the bathroom door to no avail. (Doc. 1 at ¶¶ 28-29). Officer Andrew Mohr arrived on scene, and he and Officer Chavers asked Rolfes to leave the bathroom, and informed him "that they would come and grab him if he did not open the door." (Doc. 1 at ¶¶ 30-32). In response, Rolfes told the officers he had a knife and that he would stab them if they came into the bathroom. (Doc. 1 at ¶¶ 33-34). HPD officers then yelled at Rolfes and attempted to break in the door. (Doc. 1

at ¶ 35). Rolfes told the officers he was scared and needed help, and he asked for a mental health professional to respond to the incident to help him. (Doc. 1 at ¶ 36-37).

At some point during this exchange, additional HPD officers arrived on scene, including Officers Nick Leshinski, Jacob Hamilton and Bryce Liebel. After Rolfes had asked for a mental health professional to be called, Officer Mohr got a shield and positioned himself outside the bathroom door, with his back to the exit of the bar, and Officers Hamilton and Chavers also set up outside the bathroom door. (Doc. 1 at ¶ 38). Officers Leshinski and Erickson set up to the right and left of Officer Mohr, and drew their firearms. (Doc. 1 at ¶ 39). Officer Mohr kicked in the bottom of the bathroom door, and Rolfes, who was lying on the floor, randomly stabbed through the hole Mohr created. (Doc. 1 at ¶ 41). Officer Chavers pointed his taser at the door. (Doc. 1 at ¶ 42).

After the door was partially kicked in, Rolfes asked for a nurse. (Doc. 1 at ¶ 43). During this time, he was on the phone with his mother, asking her to call law enforcement because he believed he was being attacked. (Doc. 1 at ¶ 44). He dropped the phone through the hole in the bathroom door, and said he needed help from the police because he was being attacked. (Doc. 1 at ¶¶ 45-46). At this point, Rolfes stood up and opened the door, and Officer Mohr told him he needed to leave the bathroom. (Doc. 1 at ¶¶ 47, 49). Rolfes did not appear to have a knife in

his hands. (Doc. 1 at ¶ 48). He stepped forward and back a few times, but did not leave the bathroom. (Doc. 1 at ¶ 50). During this time, he continued to ask for a nurse. (Doc. 1 at ¶ 51).

Officer Mohr instructed Officer Chavers to tase Rolfes, and he did. (Doc. 1 at ¶ 52). Officer Mohr dropped his shield, attacked Rolfes, and wrestled him to the ground. (Doc. 1 at ¶ 53). In the ensuing melee, Rolfes may have attempted to strike Officer Mohr with a knife, and HPD believed a wound on Officer Mohr's collarbone was caused by this. (Doc. 1 at ¶¶ 54, 57). Officers Leshinski, Hamilton and Liebel each shot Rolfes, and Rolfes died as a result of the gunshot wounds. (Doc. 1 at ¶¶ 55-56).

Plaintiff Gregory Todd, as personal representative of Rolfes' estate, alleges that, despite actual knowledge of his mental health disability, the officers "failed to properly communicate with [him] to deescalate the interaction or navigate [his] mental health emergency." (Doc. 1 at ¶ 62). He alleges that instead of treating the incident as a medical emergency, the officers escalated the interaction, and chose not utilize the mobile crisis response unit. (Doc. 1 at ¶¶ 65-66). He further alleges accommodations for mental health emergencies were available to the HPD, including mental health professionals and the response unit, but despite knowing of Rolfes' disability, the officers chose to not utilize the accommodations and instead

escalated the situation with unnecessary violence, ending in Rolfes' death. (Doc. 1 at ¶¶ 74-78).

Todd additionally alleges the HPD has a history of responding to mental health crises with violence, and that by failing to take reasonable steps to address accommodating individuals with mental health disabilities, HPD failed to accommodate Rolfes and acted with deliberate indifference to known mental health emergencies. (Doc. 1 at ¶¶ 84-94). Specifically, Todd alleges the City had resources and tools to address and accommodate mental health emergencies, including providing the mental health provider Rolfes requested, but it intentionally chose not to use those resources and tools. (Doc. 1 at ¶¶ 200-202.) Todd asserts the City (through the HPD) intentionally failed to modify its law enforcement approach by requesting mental health services to address Rolfes' emergency and intentionally failed to communicate effectively with him by not attempting to communicate as one would with a person in a mental health crisis. (Doc. 1 at ¶¶ 210-229).

Todd has brought claims against the City of Helena and the individual officers, alleging claims of  deprivation of Rolfe's Fourth and Fourteenth Amendment rights (individual and *Monell*), violations of Title II of the American with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA"), negligence, assault and battery, and negligent/intentional infliction of emotional distress. The City

seeks dismissal of Todd's claims for equal protection violations, violations of the Montana Constitution, violations of the ADA and RA.

## II. Discussion

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A cause of action may be dismissed under Fed. R. Civ. P. 12(b)(6) either when it asserts a legal theory that is not cognizable as a matter of law, or if it fails to allege sufficient facts to support an otherwise cognizable legal claim. *SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996). When reviewing a Rule 12(b)(6) motion to dismiss, the court is to accept all factual allegations in the complaint as true and construe the pleading in the light most favorable to the nonmoving party. *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018) (citing *Silvas v. E*Trade Mortg.Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008).

To withstand a motion to dismiss under Rule 12(b)(6), "the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007)). This means that the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). But if the complaint "lacks a cognizable legal theory or sufficient

facts to support a cognizable legal theory," then dismissal under Rule 12(b)(6) is appropriate. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

**A. Equal Protection and Montana Constitutional Claims**

The City moves to dismiss Todd's federal equal protection claim and Montana constitutional claims. In response, Todd clarifies that the federal equal protection allegation is simply part of the constitutional quote setting out his Fourteenth Amendement due process claim, and that the Montana constitutional citations are not stand-alone claims, but are intended to establish the standard of care, in part, for negligence. (Doc. 13 at 33, ¶¶ 111 and 118; 154-156). Accordingly, there are no such claims to dismiss, and the City's motion is moot.

**B. ADA Claim and RA Claim**

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014) (citing 42 U.S.C. § 12132), reversed in part on other grounds by *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600 (2015). The Ninth Circuit follows the majority of circuits which have concluded that Title II applies to arrests, although "exigent circumstances inform the reasonableness

analysis under the ADA, just as they inform the distinct reasonableness analysis under the Fourth Amendment." *Sheehan*, 743 P.3d at 1232 (citing *Waller ex rel. Estate of Hunt v. City of Danville*, 556 F.3d 171, 175 (4th Cir. 2009)). A law enforcement officer or entity can violate Title II by failing to provide a "reasonable accommodation, where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees." *Sheehan*, 743 F.3d at 1232 (citing *Waller*, 556 F.3d at 174; *Gohier v. Enright*, 186 F.3d 1216, 1220-21 (10th Cir. 1999)).

Because Title II of the ADA and § 504 of the Rehabilitation Act "provide identical 'remedies, procedures and rights,'" it is appropriate to address the claims together. *Vos v. City of Newport Beach*, 892 F.3d 1024, 1036 (9th Cir. 2018) (citing *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000)). *See also Duvall v. County of Kitsap*, 260 F.3d 1124, 1135-1136 (9th Cir. 2001). To establish a claim for disability discrimination, the plaintiff must prove the following four elements:

(1) the plaintiff is an individual with a disability;

(2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;

(3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and

(4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*Est. of Temple v. Placer Cnty. Sheriff's Off.*, No. 2:23-cv-01713-DAD-CKD, 2025 U.S. Dist. LEXIS 59037 at * 23 (E.D. Cal. March 27, 2025) (citing *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002)). To seek monetary damages under the ADA and the Rehabilitation Act, a plaintiff must allege intentional discrimination, which requires a showing of deliberate indifference. *Duvall*, 260 F.3d at 1138. Establishing deliberate indifference requires showing knowledge that harm to a federally protected right is substantially likely to occur, and that there was a failure to act on that likelihood. *Duvall*, 260 F.3d at 1139. "[T]o meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Duvall*, 260 F.3d at 1140. *See also Hall v. City of Walnut Creek*, No. C 19-05716 WHA, 2020 U.S. Dist. LEXIS 12152 at *16 (N.D. Cal January 24, 2020).

Here, the City challenges two aspects of Todd's disability claims: whether Rolfes was disabled and whether Todd has plausibly stated a claim of deliberate indifference. The Court will address each in turn.

**1. Disability**

The ADA defines "disability" in relevant part as having "a physical or mental impairment that substantially limits one or more of the major life activities" of the

person. *Temple*, at * 24 (citing 42 U.S.C. § 12101(1)). A mental impairment includes "'[a]ny mental or psychological disorder' including, among other things, 'emotional or mental illness.'" *Temple*, at * 24-25 (citing 28 C.F.R. § 36.105). Allegations of a diagnosis of a specific recognized mental illness will generally satisfy pleading requirements to establish disability under the ADA and the Rehabilitation Act. *Temple*, at * 26-27; *Greenstone v. Las Vegas Metro. Police Dep.'t*, 2:23-cv-00290-GMN-NJK, 2024 U.S. Dist. LEXIS 17759, at * 40 (D. Nev. 2024).

In its opening brief, the City argues Todd has not adequately pleaded that Rolfes suffered from a disability that limited one or more of his major life activities because Todd did not elaborate on the "condition, manner or duration" of the limitation on life activities. (Doc. 5 at 26). In response, Todd notes that the complaint not only specified Rolfes' exact diagnosis and described its effects on his life, it also alleged Rolfes received SSDI benefits, which requires a showing of an inability to engage in any substantial gainful activity by reason of any medically determinable physical or medical impairment. The City does not address the issue further in its reply, and the Court has no difficulty finding that Todd has plausibly and adequately pleaded that Rolfes suffered from a recognized disability.

//

//

**2. Deliberate Indifference**

The City argues Todd has not plausibly alleged deliberate indifference in his Complaint because his allegations of wrongdoing allege "at most, allegations of negligence." (Doc. 18 at 4). The City notes that the allegations in Rolfes' Complaint are substantially similar to the facts alleged in *Estate of Rogel v. City of Bozeman*, CV-24-034-BU-BMM, 2025 U.S. Dist. LEXIS 188173 (D. Montana September 24, 2025), in which the Court found that Rogel's Second Amended Complaint's allegations of "real-time choices made by the Officers during the mental health crisis of Rogel still do not plausibly establish deliberate indifference." *Rogel*, * 10. The Court noted that "[t]he alleged actions by the Officers to not employ prompt de-escalation tactics, even with the insertion of the words of 'intentionally' do not rise to the high standard of deliberate indifference." *Rogel*, * 11. *See also Greenstone*, at ** 43-44 and *Hall*, ** 16-17 (arguably negligent conduct does not rise to the level of deliberate indifference).

After reviewing the allegations in Todd's Complaint and comparing them with the allegations in *Rogel*, *Greenstone*, and *Hall*, the Court notes one striking difference: at the time of the incident, when there was no exigent issue of officer safety as Rolfes was still barricaded behind the bathroom door, he specifically requested an accommodation for his disability (involvement of a mental health counselor), and that request was denied. Todd alleges that despite that request, and

despite having "available resources and tools to accommodate" that request, the HPD officers instead escalated the situation with unnecessary violence. Todd alleges the City, through the HPD officers, was obligated to modify its approach with Rolfes, and it chose not to do so, in the face of a specific request for an accommodation. In *Duvall*, the court found that, at the summary judgment stage, allegations of failing to act on a requested accommodation established a triable issue of fact as to whether the county officers acted with deliberate indifference to Duvall's disability. *Duvall*, 260 F.3d at 1140. Taking the allegations of Todd's Complaint as true for the purpose of the Motion to Dismiss, the Court finds Todd has plausibly pleaded deliberate indifference based on HPD's failure to accommodate his known disability.

## III. Conclusion

For the reasons stated above, IT IS HEREBY ORDERED that the City's motion to dismiss (Doc. 4) is DENIED. The Court will set a preliminary pretrial conference schedule by separate order.

DATED this 30th day of September, 2026.

Kathleen L. DeSoto
United States Magistrate Judge